**Richard LUCAS, et al.,**
**Plaintiffs-Appellees,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**Richard LUCAS, et al.,**
**Plaintiffs-Appellants**
**Cross-Appellees,**

v.

**UNITED STATES of America,**
**Defendant-Appellee**
**Cross-Appellant.**

**Nos. 84–1296, 84–1437.**

United States Court of Appeals,
Fifth Circuit.

Dec. 24, 1986.

Irene M. Solet, Sandra Simon, Civil Rights Div., Appellate Staff, Dept. of Justice, Washington, D.C., for defendant-appellant.

Walter L. Boyaki, El Paso, Tex., for plaintiffs-appellees.

Walter L. Boyaki, El Paso, Tex., for plaintiffs-appellants cross-appellees.

Irene M. Solet, Appellate Staff, Robert S. Greenspan, Dept. of Justice, Civil Div., Bruce G. Forrest, Washington, D.C., for defendant-appellee cross-appellant.

Before POLITZ, HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Christopher Lucas was rendered a paraplegic in October 1980 by an injection negligently administered in an Army hospital.

The United States concedes liability under the Federal Tort Claims Act, but argues that the awarded damages were excessive. We are persuaded that the nonmedical damages awarded exceeded the statutory limit of recovery against a hospital under Texas law and that this cap is applicable. We reject the argument that the damage cap fails muster under the United States Constitution and certify to the Texas Supreme Court the question of its constitutionality under the Texas Constitution.

I

When fourteen-month-old Christopher Lucas developed a swollen neck and a fever after a family outing, his parents took him to the William Beaumont Army Medical Center near El Paso, Texas, for diagnosis and treatment. An army doctor determined that the child had a cyst in his thyroglossal duct and ordered an injection of 600,000 units of Bicillin LA, a penicillin product manufactured and packaged in its own syringe by Wyeth Laboratories.

A hospital nurse gave Christopher the shot in his right buttock with a 1¼″ needle that was fully inserted. Christopher's father testified that he saw a thin line of blood appear in the tube containing the medication when the nurse aspirated the plunger before injecting the medication into the baby. Blood appeared at the injection site, and within a few moments, Christopher's legs became mottled. The doctors were summoned. They concluded that the baby was having an allergic reaction to the antibiotic and gave injections to combat it.

Several hours later, Christopher's parents noticed that his legs were not moving as they usually did when he cried. Tests conducted during the next several days indicated paralysis. An operation to remove a tumor suspected to be pressing on the nerves controlling the child's legs determined that the paralysis was the result of blood starvation of the nerves caused by a blockage created when the Bicillin LA was injected directly into an artery. Tragically, the paralysis is permanent.

Christopher and his parents sued the United States under the Federal Tort Claims Act. The district court held that the injection was negligently administered and awarded the parents $498,628.72 as the present value of the past and future medical expenses they face in caring for Christopher until his majority. While the district court did not detail its calculation, the amount of the award is consistent with the total-offset method of discounting. The court also awarded to Christopher $350,000.00 as the present value of the future medical expenses he will have after his eighteenth birthday, and $600,000.00 as the present value of the impairment of his future earning capacity. Finally, the court awarded Christopher $1,500,000.00 for pain and suffering. The district court then reduced the award by the $400,000.00 paid by Weyth Labs to the Lucases in settlement of a state court suit.

The district court refused to apply Tex. Rev.Civ.Stat.Ann. art. 4590i (Vernon Supp. 1986) to limit the nonmedical damages, stating that the provision did not apply to hospitals operated by the United States. In an amended judgment, the court ordered that interest on a judgment against the United States be paid only as it accrues after a claim is filed with the Comptroller General and not from the date of judgment. See 31 U.S.C. § 1304(b)(1)(A). The court awarded no damages for the parents' separate claims for pain and suffering.

The United States appeals both the district court's refusal to apply Texas law limiting nonmedical damages and its present value calculations of the damages awards. Plaintiffs cross-appeal, contending that the district court incorrectly allowed interest only from the filing of the judgment with the Comptroller General and that it erred in offsetting its settlement with Wyeth Labs. Plaintiffs also argue that the district court should have awarded damages to the parents for pain and suffering.

II

Texas has limited the amount of nonmedical damages recoverable from a health

care provider such as a doctor or hospital in a medical malpractice action. Tex.Rev. Civ.Stat.Ann. art. 4590i, § 11.02(a) (Vernon Supp.1986) states: "In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000." The next subsection specifies that this limitation does not apply to damages awarded for "the expenses of necessary medical, hospital, and custodial care received before judgment or required in the future." *Id.* § 11.02(b). The limit is adjustable according to an increase or decrease in the consumer price index, *id.* § 11.04, a limit assertedly now near $850,000.00.

### A

■ Plaintiffs first argue, and they persuaded the district court, that because the definitions of "health care provider" and "hospital" supplied in the statutes do not include federally operated institutions, *see* Tex.Rev.Civ.Stat.Ann. arts. 4590i § 1.03(a)(3), .03(a)(5), 4437f § 2(b)(1) (Vernon 1976 & Supp.1986), section 4590i does not apply to the federal government in this case. This argument forgets that the source of the government's liability here is the Federal Tort Claims Act, not the Texas liability limit provision.

In a suit under the Federal Tort Claims Act, a plaintiff may recover only to the extent the federal government has waived its sovereign immunity. Congress has determined that the federal government shall be liable for tort claims "in the same manner and *to the same extent as a private individual under like circumstances.*" 28 U.S.C. § 2674 (emphasis added). The law of the state in which the suit arises measures the liability of a similarly situated private party. *See* 28 U.S.C. § 1346(b).

Texas law informs how a private party would be treated; it does not tell us, indeed it cannot, the extent to which the federal government has waived its sovereign im-

munity. By excluding federally operated institutions from coverage under § 11.02, the Texas legislature simply acknowledged the limit of its power. The Federal Tort Claims Act assures the federal government of that treatment accorded private parties in Texas. Hospitals and health care providers licensed in Texas are subject to the § 11.02 liability limit. Therefore, § 11.02 also applies to a federally operated hospital under the Federal Tort Claims Act.

### B

■ The plaintiffs urge that the government waived its argument under § 11.02 when it failed to plead this section as an affirmative defense under Fed.R.Civ.P. 8(c). Whether § 11.02 creates an affirmative defense within the meaning of Rule 8(c) is determined by looking to the substantive law of Texas. *See Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 95 (5th Cir.1976). The plaintiffs cite a recent Texas Court of Civil Appeals case holding that art. 4590i, § 11.02(a) "is an affirmative defense and must be pled." *Wun-Yi Tsai v. Wells,* No. 13–86–124–CV at 9 (Tex.App.—Corpus Christi Nov. 26, 1986) (not yet published). The plaintiffs thus conclude that because the § 11.02(a) issue was first raised during the trial, the government waived the defense. But this court has noted that although "state law defines the nature of defenses, ... the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Morgan Guaranty Trust Co. v. Blum,* 649 F.2d 342, 345 (5th Cir. 1981).

Fed.R.Civ.P. 8(c) requires that an affirmative defense be set forth in a defendant's responsive pleading. Failure to comply with this rule, usually results in a waiver. *Starcraft Co. v. C.J. Heck Co.,* 748 F.2d 982, 990 n. 11 (5th Cir.1984). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Allied Chemical Corp. v. Mackay,* 695 F.2d

854, 855–56 (5th Cir.1983). That is, the defendant does not waive an affirmative defense if "[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Id.* at 856.

In the present case, although the government did not affirmatively plead the § 11.-02(a) issue, it did raise the issue at a "pragmatically sufficient time," and the plaintiffs were not prejudiced in their ability to respond. The issue was raised at trial immediately following testimony of the economist regarding the present value of Christopher's damages. Moreover, the applicability of the Texas statutory cap on malpractice damages is purely a legal issue which can be resolved without the need for factual proof. The statute does not affect the plaintiffs' proof of damages, but simply limits the dollar amount of recovery on the damages the plaintiff *is* able to prove. In addition, the judge made separate findings for the medical and nonmedical items. The litigants had full opportunity to develop damages not subject to the cap. In sum, the § 11.02(a) issue was properly before the district court.

·C

▮ Plaintiffs urge that if the damage cap is applicable by its terms, it contravenes the Texas Constitution. First, they argue that their substantive due process right to sue for full compensation has been abrogated. Second, plaintiffs argue that the statute denies them equal protection, while conceding that the argument is not an "exhaustive equal protection analysis." Plaintiffs rest their main constitutional challenge upon the due process and equal protection provisions of the Tex.Const. art. 1, §§ 3, 13, and 19.

We are uncertain whether the Texas Supreme Court would uphold the statute under the Texas Constitution. Specifically, we find "no controlling precedent in the decisions of the Supreme Court of Texas." Tex.R.App.P. 114(a). We are persuaded that we should certify this important question to the Texas Supreme Court, the final arbiter of this issue, rather than engage in an *Erie*-type guess.

–1–

The Texas Rule of Appellate Procedure 114(a) states that a question of state law can be certified to the Supreme Court of Texas if "it appears to the certifying court that there is no controlling precedent in the decisions of the Supreme Court of Texas." The Texas Supreme Court has not ruled on the constitutionality of the damage cap, but three Texas courts of appeals have declared the cap unconstitutional.

In diversity cases, we have held that in the absence of a direct holding by the highest court in a state, we should defer to the holdings of lesser courts unless we are convinced by other evidence that the state law is otherwise. *See, e.g., Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1388 (5th Cir.), *cert. denied,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980); *see also West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). We recognize that the present certification inquiry—whether there are decisions of the Texas Supreme Court that control the liability cap issue—differs from our inquiry in diversity cases. Nonetheless, decisions of the intermediate Texas courts with their writ histories are relevant to the determination of controlling decisions of the Texas Supreme Court. We are persuaded that as a matter of discipline we ought to survey the Texas law both to explain our uncertainty and assure that we seek certification only when necessary. We do not presume to instruct in our explanation but to explain our difficulty and allow the only court empowered finally to state the law, to do so. Therefore, we will first look to the decisions of the Texas Court of Civil Appeals. After explaining why those cases fail to control the issue before us, we will inquire whether any Texas Supreme Court decisions otherwise control the issue, even though that court has not addressed this exact issue.

In *Baptist Hospital v. Baber,* 672 S.W.2d 296 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.), the court held § 11.02 unconstitutional as violative of equal protection, but it did not make clear whether it was relying on federal or state constitutional protections. While recognizing both the strict scrutiny and the rational basis test for evaluating challenged legislation, the court did not say which test it applied and ultimately relied on the reasoning of the North Dakota Supreme Court to conclude that the statute does not provide adequate compensation for plaintiffs with meritorious claims. *See Arneson v. Olson,* 270 N.W.2d 125, 135–36 (N.D.1978). The Texas Supreme Court issued a per curiam opinion refusing the application for writ of error in the *Baber* case, no reversible error. The court there stated that "the court of appeals need not have decided this case on constitutional grounds.... We do not pass upon the constitutionality of the damage limitation provision contained in the medical liability act." *Baptist Hospital v. Baber,* 714 S.W.2d 310 (Tex.1986).

In *Malone & Hyde, Inc. v. Hobrecht,* 685 S.W.2d 739, 753 (Tex.App.—San Antonio 1985, writ dism'd by agr.), the court added little reasoning for its holding that § 11.02 is unconstitutional as applied to pharmacies. The court quoted the North Dakota opinion for the proposition that the cap did not provide adequate compensation for the seriously injured, and relied on its sister circuit's holding in *Baber.*

The two participating judges in *Detar Hospital, Inc. v. Estrada,* 694 S.W.2d 359, 365–66 (Tex.App.—Corpus Christi 1985, no writ), cited Tex.Const. art. 1, § 3, reviewed the standards used in equal protection cases, and found an insufficient showing of "societal quid pro quo" to sustain the statute. The court found that the damage cap was "an unreasonable infringement on a plaintiff's constitutionally guaranteed right to obtaining full redress for injuries caused by another's wrongful conduct." *Id.* at 366. The same court later reaffirmed its holding that § 11.02 was unconstitutional.

*See Brownsville Medical Center v. Gracia,* 704 S.W.2d 68, 80 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

We do not find the opinions of the courts of appeals to be dispositive of the issue of the cap's constitutionality for two reasons. First, we find no clue in any of the four opinions indicating that any of the courts found the law unconstitutional specifically under the Texas Constitution. Only the *Estrada* case cites the Texas Constitution and then only the equal protection provision of Tex.Const. art. 1, § 3. We have found no Texas case, and counsel advises of none, that holds that the state equal protection safeguards extend beyond the reach of the equal protection clause of the fourteenth amendment to the United States Constitution. The cases we have found, rather, generally lump the two protections together. *See Rucker v. State,* 170 Tex. Cr.R. 487, 342 S.W.2d 325 (1961); *Tisko v. Harrison,* 500 S.W.2d 565 (Tex.Civ.App.—Dallas 1973, writ ref. n.r.e.). Indeed, *Estrada* relies on federal case law for its discussion of equal protection standards and their application. Of course, we are not bound to follow state court rulings invalidating state laws on federal constitutional grounds. *Mercer v. Long Mfg. N.C., Inc.,* 665 F.2d 61, 73 (5th Cir.1982).

Second, the Texas Supreme Court's original grant of a writ of error in *Baber* is a signal that the Texas Supreme Court may not be prepared to follow the lead of the state courts of appeals. The Texas Supreme Court ultimately refused the writ, no reversible error, but cautioned that the *Baber* court of appeals need not have addressed the constitutional issues, *Baptist Hosp. v. Baber,* 714 S.W.2d 310 (Tex.1986). The supreme court expressly refused to consider the constitutionality of § 11.02 based on the facts of *Baber.* Consequently, we cannot conclude that the court of appeals decision in *Baber* reflects the view of the Texas Supreme Court.

Although the Texas Supreme Court has not determined whether § 11.02, violates Tex.Const. art. 1 §§ 3, 13, and 19, it has

decided cases under each of these constitutional provisions. However, these cases do not plainly inform us how the Texas Supreme Court would answer the question before us.

a. *The due process provisions.* The Supreme Court has held that Tex.Const. art. 1, § 13 and § 19, the two due process clauses Lucas invokes, are not coterminous. *See Nelson v. Krusen,* 678 S.W.2d 918, 921 (Tex.1984). Section 19 has wording similar to the due process clause of the fourteenth amendment to the United States Constitution. We know of no Texas case holding that section 19 contains broader rights than those of the federal Constitution, and at least one case has implied that to the extent the two constitutions had similar terms, they imposed similar restrictions on the legislature. *See Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 252 (1887); *see also* Tex.Const. art. 1, § 19, interpetive commentary 447, 449 (Vernon 1955). The Texas Supreme Court might well decline to find § 11.02 unconstitutional under section 19 for the same reasons we find it is not unconstitutional under the due process clause of the fourteenth amendment.

The Texas Supreme Court has held, however, that section 13 is broader in its protections than the fourteenth amendment. *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex. 1983). In *Sax,* the court held that a statute of limitations that prohibited a minor from bringing her medical malpractice action was unconstitutional because the statute "effectively abolishes a minor's right to bring a well-established common law cause of action without providing a reasonable alternative." *Id.* at 667. Nevertheless, the court held the statute constitutional insofar as it prohibited the parents from bringing their action for medical expenses.

It is contended that the damage limitation offends section 13 by preventing malpractice victims from receiving full recovery. In *Sax* the court noted that "the right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress." *Id.* at 665–66. Under this test, the Texas Supreme Court might conclude that § 11.02 imposes no such abrogation of rights. The argument is that no putative plaintiff's right of action is abolished. Rather, the statute enacts a limitation on damages. It would continue that Lucas did bring his action, and he did receive full damages for his actual past and future medical expenses with recovery up to $500,000 for his non-medical harm; that § 11.02 imposes no limit on liability for the out-of-pocket damages suffered by a malpractice victim. The only limitation imposed by the section is on liability for the more speculative damages.

Even should the Texas Supreme Court conclude that a right has been abrogated, it could yet conclude that the legitimate purposes of the statute permitted the abrogation. Recognizing that the amounts paid out in judgment have a "material adverse effect on the delivery of medical and health care in Texas," the legislature enacted art. 4590i to "assure that awards are rationally related to actual damages" and to "make affordable medical and health care more accessible and available to the citizens of Texas." Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.02(a)(6), (b)(2), (b)(5) (Vernon Supp. 1986). Because the Texas Supreme Court agreed that the purpose behind a statutory predecessor to 4590i was legitimate, *Sax,* 648 S.W.2d at 667, it might well agree that the legislative purpose for limiting the amount of liability is also legitimate. Because plaintiffs can recover their full medical damages under the statute, the Texas Supreme Court could find that the purpose of the limitation outweighs the interest plaintiffs have in a greater recovery for more speculative damages. That is, the Texas Supreme Court could conclude that § 11.02 is a restrained response to a legitimate legislative problem.

Plaintiffs argue that the legislature provided no quid pro quo when it placed the cap on damages so that victims might otherwise be compensated. But we have seen

no case showing that the Texas Supreme Court has adopted a quid pro quo approach. The Texas Supreme Court could well look to a federal measure and agree with the United States Supreme Court that "it is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 88, 98 S.Ct. 2620, 2638, 57 L.Ed.2d 595 (1978) (footnote omitted). Furthermore, the Texas Supreme Court has not required that substitute remedies be provided if the restriction on the common law right of action is "a reasonable exercise of the police power in the interest of the general welfare." *Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951, 955 (1955). Here the Texas Supreme Court could indeed find that this statute is, as is arguable from its provisions and purposes, a careful effort to promote the health of the citizens of the state.

b. *The equal protection provision.* Plaintiffs allege that the statute violates art. 1, § 3, of the Texas Constitution by creating two classes: those who are less grievously injured who are compensated in full for their injuries, and those who are more seriously hurt who are not. As we will explain in terms of the United States Constitution, we are at a loss to see how this "classification" violates equal protection notions. *Every* malpractice victim is limited by the statute. To be sure, some of those victims will be able to recover their "full" damages, while others will arguably be limited by the cap. Nevertheless, the cap applies to all. All malpractice victims receive equal protection.

Of course, the Texas Supreme Court could construe the statute as distinguishing between those who recover all of their damages and those who do not, but that court has held that "[u]nder [art. 1, § 3] the Legislature has the power to adopt any classification it sees fit, provided there is a reasonable basis for such classification." *Burroughs v. Lyles*, 142 Tex. 704, 181 S.W.2d 570, 574 (1944). As we have already discussed, we think that the Texas Supreme Court could find that the legislative bases for art. 4590i are reasonable and not arbitrary.[1]

D

Plaintiffs maintain that because the limitation contravenes the Texas Constitution there is no "necessity of scrutinizing the statute under Federal Constitutional guarantees." Under the rules for certification adopted by the Supreme Court of Texas, certified questions are those "which may be determinative of the cause then pending." Tex.R.App.Proc. 114(a). To nourish that cooperative spirit necessary to allow the newly adopted certification process to achieve its potential, we are persuaded that we ought not seek the ruling of the Texas Supreme Court regarding an issue until we have decided other issues in the case to assure that the certified issue may be dispositive of the case before us. That court must dole its limited judicial time by taking for decision only issues of import that must be decided in a true case or controversy. For that reason, and because we regard the assertion that the damage cap contravenes the fourteenth amendment of the United States Constitution to be nigh frivolous, we decide that issue now.

Any due process challenge must rely on a perceived abrogation of a common law right to recover for tort damages worked by the statute. Regarding a due process challenge to a limit on liability in another context, the United States Supreme Court stated that

---

**1.** Lucas also argues that should the constitutionality of the statute be sustained, it should be applied so that each claimant has his own statutory cap on damages. This argument appears to fail in light of the statute's language limiting the "civil *liability* for damages of the physician or health care provider." By its own terms, the statute limits the liability of each defendant rather than the recovery of each claimant. *Cf. Baptist Hospital v. Baber*, 714 S.W.2d 310 (Tex. 1986). Of course, the interpretation of the Texas law ultimately rests with the Texas Supreme Court.

[o]ur cases have clearly established that '[a] person has no property, no vested interest, in any rule of the common law.' The 'Constitution does not forbid the creation of new rights, *or the abolition of old ones recognized by the common law,* to attain a permissible legislative object,' despite the fact that 'otherwise settled expectations' may be upset thereby. Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts. *Duke Power,* 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32 (dicta) (emphasis added; citations omitted). We conclude that statement answers this case, and we find that there is no due process violation in the application of this statute to plaintiffs such as Lucas under the federal Constitution.

■ Any federal equal protection argument fails under the tests established by the United States Supreme Court. The strict scrutiny standard, *see Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), is inapplicable because we have neither a suspect class nor a fundamental right in issue. Under the rational basis test, *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), we find that there is a rational basis for § 11.02 and that the legislature enacted the statute in an attempt to accomplish a legitimate purpose. *See Chrysler Corp. v. Texas Motor Vehicle Commission,* 755 F.2d 1192, 1203 (5th Cir.1985).

Lucas criticizes the legislative findings and purpose for the statute, but fails to acknowledge that "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Shelton v. City of College Station,* 780 F.2d 475, 479 (5th Cir.1986) (en banc) (quoting *Vance v. Bradley,* 440 U.S. 93, 110–11, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979)). Lucas has failed to convince us that there is no rea-

sonable basis for the Texas legislature to conclude that this ceiling on recovery from certain institutions is not conceivably related to the availability and cost of malpractice insurance and that such insurance and the distribution of medical care in Texas are not conceivably linked. We hold that § 11.02 does not violate the equal protection provisions of the federal Constitution.[2]

### III

■ The United States also claims that the district judge did not limit Christopher's award for pain and suffering and his parents' award for future medical expenses to their present values.

Plaintiffs' economist who testified that he considered both the inflation rate and the discount rate in his calculations, offered the only relevant expert testimony. He testified that he employed a total-offset approach to the determination of the present values of the damages. That approach specifies that when the inflationary rate, including considerations for pay increases over a career, and the appropriate discount rate are equal, they may be offset. This method allows computation of present values by simply adding the absolute amounts comprising the award.

We have rejected the total-offset approach in cases applying substantive federal law, *see Culver v. Slater Boat Co.,* 722 F.2d 114, 118, 122 (5th Cir.1983) (en banc), *cert. denied,* 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984). But the government cites no Texas law rejecting the total-offset approach. Moreover, the government introduced no evidence concerning the proper method to calculate the present value of the damages. In this circumstance, we cannot find that the approach taken by the district court was erroneous.

The United States next complains that no present value calculation was made for two elements of the damage award. The court

2. We are cited to a contrary decision in *Waggoner v. Gibson,* 647 F.Supp. 1102 (N.D.Tex. 1986). That court did not support its conclusion that the medical cap violated the United States Constitution with any reasoning or citation of authority. It is contrary to our reading of the fourteenth amendment.

expressly found that its award for past and future medical expenses incurred by the parents was the present value. The award is consistent with the use of the total-offset method, and we find no error. The district court did not make a similar finding of present value with regard to Christopher's award of $1,500,000.00 for past and future pain and suffering. This amount, however, would be the value calculated using the total-offset approach to determine present value.

The parents appeal the court's refusal to award damages for their mental anguish and loss of companionship. The government apparently agrees that under Texas law the parents have a right of action, but argues that the plaintiffs' evidence failed to support an award of damages. The district court made no findings on this issue. In any event, if the Texas Supreme Court decides that the damage cap applies in this case, then any award to the parents for mental anguish would be barred by the cap. However, if the Texas Supreme Court rules the cap inapplicable, the parents' mental anguish claim should be remanded to the district court for reconsideration.

### IV

█ Plaintiffs appeal the limiting of interest to that allowed by 31 U.S.C. § 1304(b)(1)(A). That section provides that interest may be paid "on a judgment of a district court, only when the judgment becomes final after review on appeal ... and then only from the date of filing of the transcript of the judgment with the Comptroller General through the day before the date of the mandate of affirmance." Plaintiffs argue that interest should be awarded from the date of judgment, and that 31 U.S.C. § 1304 does not apply to FTCA cases because 28 U.S.C. § 2674 is not enumerated as one of the sections covered by § 1304. However, the section authorizing payment of judgments against the United States, 28 U.S.C. § 2414, is listed in section 1304. Whatever the attraction of the argument that "[i]nterest should begin from the date of judgment for the Government just like everyone else," interest cannot be awarded against the government in an FTCA suit absent express statutory authority. The district court correctly amended its judgment to award interest according to 31 U.S.C. § 1304.

█ Plaintiffs seek prejudgment interest on the ground that it took the district judge a full year to render judgment. The argument is without merit. No prejudgment interest may be awarded in an FTCA case. *See* 28 U.S.C. § 2674.

### V

█ Plaintiffs argue that the offset of the $400,000.00 paid by Wyeth Labs to the plaintiffs is improper following the Texas Supreme Court's holding in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984). That case, the argument goes, did away with the one-recovery rule in comparative negligence tort cases and makes the dollar-for-dollar reduction of the amount owed by the United States incorrect.

By its own terms *Duncan* applies only to cases tried after July 13, 1983. *Id.* at 434. The trial in this case concluded in February 1983, and *Duncan* is inapplicable.

### VI

We reverse the district court's conclusion that the medical cap does not apply to a federal hospital. We leave for decision by the Texas Supreme Court on certification, whether the cap on damages recoverable from a hospital in Texas can be sustained under the Texas Constitution. The parties will promptly submit a proposed certification order. *See* Tex.R.Civ.P. 114. We also hold that while the district court failed to resolve the plaintiffs' claims for mental anguish, this issue need be remanded only if the Texas Supreme Court finds § 11.02 unconstitutional. We affirm the district court in all other respects.