John F. STARNS, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee,

and

R. Nobarian; Janet Spitzer, Defendants.

Jeffrey A. STARNS, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee,

and

R. Nobarian; Janet Spitzer, Defendants.

Beverly STARNS, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee,

and

R. Nobarian; Janet Spitzer, Defendants.

John F. STARNS, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant,

and

R. Nobarian; Janet Spitzer, Defendants.

Jeffrey A. STARNS, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant,

and

R. Nobarian; Janet Spitzer, Defendants.

Beverly STARNS, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant,

and

Janet Spitzer; R. Nobarian, Defendants.

Nos. 89–2789 to 89–2791 and
89–2802 to 89–2804.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 29, 1990.

Decided Jan. 9, 1991.

Gwendolyn Jo M. Carlberg, Law Offices of Gwendolyn Jo M. Carlberg, Alexandria, Va., for plaintiffs-appellants.

Richard Alan Olderman, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Robert S. Greenspan, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for defendant-appellee.

Before CHAPMAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and HOUCK, District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

Plaintiffs-appellants John and Beverly Starns and their minor child, Jeffrey, brought a medical malpractice action against the United States under the Federal Tort Claims Act ("FTCA") for negligent care rendered to Jeffrey at the DeWitt Army Community Hospital following his birth. The United States did not contest liability, and the district court awarded damages in the amount of $750,000 (the amount of the Virginia Medical Malpractice Act ("VMMA") cap) to Jeffrey and $295,780 to Mr. and Mrs. Starns. The critical issue on this appeal is whether the VMMA cap applies to federal hospitals. The appellants contend that it does not. Additional issues raised by the appellants include whether the district court erred: (1) in failing to make adequate awards of damages, (2) in applying a 9.25 percent discount rate, and (3) in failing to increase the *ad damnum* for each plaintiff. Because we hold that the VMMA cap is applicable, the remaining assignments of error raised by the appellants are moot. The United States challenges the district court's application of two caps to the claims in this case and the determination of post-judgment interest. We agree with the United States on these issues and affirm in part and reverse in part.

I.

Jeffrey Starns was born on June 3, 1982 to John and Beverly Starns. From June 4

to June 6, 1982, Jeffrey and Mrs. Starns were patients at the DeWitt Army Community Hospital. On June 6, 1982, both were discharged. The next day Jeffrey was rushed to Walter Reed Army Medical Center where emergency surgery was performed to arrest an intracranial hemorrhage.

Jeffrey suffered severe permanent mental and physical injuries as a result of the medical treatment he received at the DeWitt Army Community Hospital from June 4 through June 6, 1982. The United States concedes that the staff at the hospital acted negligently in failing to diagnose and treat Jeffrey's intracranial bleeding and that their negligence caused his injuries. As a direct result of such negligence, Jeffrey is permanently mildly to borderline retarded with an intelligence quotient of between sixty-three and seventy. Jeffrey lacks the capacity to reason and performs a couple of years behind his chronological age group. It is highly unlikely that Jeffrey will be able to obtain competitive employment; however, he will be able to assume sheltered employment. Jeffrey also suffers from hydrocephalus (water on the brain), seizures, poor coordination and a loss of vision in his left peripheral visual field and lower left quadrant.

On June 14, 1982, all three plaintiffs filed individual administrative claims with the DeWitt Army Community Hospital. Subsequently, three lawsuits were filed in federal district court, and a trial was held. The parties stipulated to calculations of Jeffrey's projected lifetime expenses for medical treatment, education and therapy, and care and housing.

## II.

Before reaching a decision, the district court certified the following questions to the Supreme Court of Virginia:

1. Does the medical malpractice cap set forth in § 8.01–581.15 of the Virginia Code violate the Virginia Constitution?

2. Does the medical malpractice cap set forth in § 8.01–581.15 of the Virginia Code violate the United States Constitution?

3. Does the medical malpractice cap set forth in § 8.01–581.15 of the Virginia Code apply to all three petitioners together or does it apply to each of the petitioners individually?

4. Does the medical malpractice cap set forth in § 8.01–581.15 of the Virginia Code apply to this case, given that the DeWitt Army Community Hospital is federally operated and is not licensed by the Commonwealth of Virginia?

In an unpublished *per curiam* opinion, the Supreme Court of Virginia (1) found the statute constitutional under both the Virginia and federal constitutions, (2) refrained from answering whether the statute applied to each plaintiff individually, and (3) held that the malpractice cap did not apply to federally operated hospitals not licensed by the state.

The district court issued an opinion on July 27, 1989. First, the district court held that all three petitioners were bound by their administrative claims, because they had offered no newly discovered evidence or proof of intervening facts as required by 28 U.S.C. § 2675(b) (1988). Then the district court observed that its findings on Jeffrey's damages for future medical expenses, education, housing, and pain and suffering which were in excess of $4,600,-000 had largely "been rendered moot" by application of the Virginia statutory cap. The court held that although the Virginia Supreme Court had ruled that the cap did not apply to federal hospitals not licensed by the state, "[t]he Virginia legislature's intent is not determinative in a suit involving the FTCA."

The court applied the cap to Jeffrey and his parents separately and awarded Jeffrey $750,000 and awarded the parents the full amount of the damages assessed, $295,780: $270,000 to Mrs. Starns for the value of her past services rendered to Jeffrey; $13,771 to Mr. Starns for his lost wages; and $12,-009 to Mr. and Mrs. Starns for hospital, doctor and travel expenses incurred on Jeffrey's behalf. The court also awarded

post-judgment interest running from the date of judgment.

## III.

■ We first address whether the district court correctly found that the VMMA cap limits the liability of the federal government. Since this is a question of law, we review it *de novo. Taylor v. United States*, 821 F.2d 1428, 1430 (9th Cir. 1987), *cert. denied*, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988).

Virginia enacted the Virginia Medical Malpractice Act in 1976. Section 8.01–581.-15, as originally written and relevant here, provides:

> In any verdict returned against a health care provider in an action for malpractice where the act or acts of malpractice occurred on or after April one, nineteen hundred seventy-seven which is tried by a jury or in any judgment entered against a health care provider in such an action which is tried without a jury, the total amount recoverable for any injury to, or death of, a patient shall not exceed seven hundred fifty thousand dollars.

The statute defines "health care provider" as "a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services." Va.Code Ann. § 8.01–581.1(1) (1984).

Appellants argue that because the definition of health care provider only includes facilities licensed by the Commonwealth and since federally operated hospitals are not licensed by the state, the cap does not apply to them. This argument, however, overlooks the fact that the source of the government's liability is the FTCA and not the VMMA's cap. *See Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986). In a suit under the FTCA, a plaintiff may only recover against the government to the extent the government has waived its sovereign immunity. While Virginia law informs us on how a private party would be treated, it is incapable of telling us to what extent the federal government has waived its sovereign immunity. *See Reilly v. United States*, 863 F.2d 149, 162 (1st Cir. 1988); *Lucas*, 807 F.2d at 417.

The FTCA provides that the government "shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1988). The FTCA assures the federal government of that treatment accorded private parties. The government's liability is to be determined "in accordance with the law of the place where the [negligent] act or omission occurred." 28 U.S.C. § 1346(b) (1988). Accordingly, Virginia law, as applied to private parties in "like circumstances," determines the extent of the government's liability in this case. Since private health care providers in Virginia would in "like circumstances" be entitled to the benefit of section 8.01–581.15, so, too, is a federally operated hospital in that state.

Other circuits have agreed that limitations similar to the one involved here, which purport to apply only to state-licensed health care providers, apply to the United States. *See Reilly v. United States*, 863 F.2d 149, 162 (1st Cir.1988); *Taylor v. United States*, 821 F.2d 1428, 1431 (9th Cir.1987), *cert. denied*, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988); *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986). *See also Scheib v. Florida Sanitarium & Benev. Ass'n*, 759 F.2d 859, 863–64 (11th Cir.1985).

## IV.

■ Although we affirm the district court's decision to apply the cap, its application to the claims in this case was erroneous. As we held in *Boyd v. Bulala*, 905 F.2d 764 (4th Cir.1990), based on certified questions to the Virginia Supreme Court, "the cap applicable to any single patient's injury covers both compensatory and punitive damage claims of the patient and any claims by others that, by substantive law, are 'derivative' of the patient's claim." *Id.* at 767. Claims of emotional distress caused by injury to a single patient and claims for medical expenses of a single patient are derivative. *Id.*

■ Thus, all claims arising out of Jeffrey's injuries are subject to one statutory

cap. Since the damages awarded to Mr. and Mrs. Starns for the value of Mrs. Starns' past services, for lost wages of Mr. Starns, and for hospital and travel expenses incurred on behalf of Jeffrey are derivative, they must be included within Jeffrey's cap. Accordingly, the limit for all damages in this case is $750,000. This limitation renders the appellants' other assignments of error moot.

In *Boyd*, we also addressed how damage awards in excess of a cap should be apportioned among the claims. Reduction of the awards should occur in the following order: "first, awards based on derivative claims of others than the patient; next, punitive damage awards to the patient; last, compensatory damage awards to the patient." *Id.* Since the compensatory claim of Jeffrey exceeds $750,000, the derivative claims of Mr. and Mrs. Starns must be annulled.

### V.

■ The United States appeals the calculation of post-judgment interest from the date of judgment contending that 31 U.S.C. § 1304(b)(1)(A) (1988) controls. We agree. Interest cannot be awarded against the government in the absence of express statutory authority. The section authorizing payment of judgments against the United States in an FTCA suit is 28 U.S.C. § 2414 (1988) which is specifically listed in section 1304. Accordingly, section 1304 applies in this case. *See Lucas v. United States*, 807 F.2d 414, 423 (5th Cir.1986). Section 1304(b)(1)(A) provides that interest may be paid "on a judgment of a district court, only when the judgment becomes final after review on appeal ... and then only from the date of the filing of the transcript with the Comptroller General through the day before the date of the mandate of affirmance." Therefore, interest must be recalculated as provided in § 1304(b)(1)(A).

### VI.

For the foregoing reasons, we affirm the district court's finding that federal hospitals are entitled to the benefit of the VMMA cap but reverse its holding that derivative claims are not subject to the single cap. We also reverse the district court's calculation of post-judgment interest. We remand to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.