**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-50030**
_____

**CATHERINE DICKASON,**

**Plaintiff-Appellee,**

**versus**

**YSLETA INDEPENDENT SCHOOL DISTRICT,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
**(EP-93-CV-339)**
_____

February 21, 1997

Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:[*]

At issue is whether, _inter alia_, Catherine Dickason's EEOC charge was timely filed. Because none of the conduct found to be discriminatory occurred within 300 days of that charge, it was not timely; and therefore, this action is time-barred. We **REVERSE** and **RENDER**.

I.

Dickason began her employment with the Ysleta Independent School District (YISD) in 1983. In 1986, she began teaching and coaching at its Del Valle High School. Dickason was accused in

_____

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1991 by several players and her assistant coach, Sally Fierro, of mistreating and abusing her players; encouraging them to steal equipment from other schools; having a non-YISD employee massage them before games; and administering prescription pain-killers to a player, in order that the player could participate in a game.

When the Principal received these reports, he notified the central office, as was YISD policy, and was told to conduct an investigation, also in accordance with YISD policy. The investigation included interviewing some of Dickason's players. On 25 June 1991, one of them, Sandra Sepulveda, gave a written statement corroborating reports of Dickason's dispensing prescription pain-killers to her players, and of Dickason's having a friend give a massage to Sepulveda. Similarly, on 17 July, Traci Kirtley gave a statement that Dickason was abusing the players, encouraging them to steal equipment, and had pushed Kirtley around after a game.

After the initial investigation, Dickason was notified on 21 August 1991 that she was suspended with pay pending further investigation. That 24 September, she was notified that a bottle of prescription pain-killers had been found in her desk, and that the possession of prescription medication was added to the charges against her.

Dickason met with the YISD Superintendent, Dr. Mauro Reyna, on 1 October 1991 and was given an opportunity to respond to the charges. Dickason received official notice on 10 January 1992 of

the five charges against her, of her proposed termination, and of her right to a due process hearing.

As a result of the ensuing and protracted due process hearing, Dickason later claimed further discrimination in the form of onerous conditions of suspension and review of her case, claiming that YISD conducted a lengthy investigation in which Dickason was not allowed on the school grounds and therefore could not retrieve any of the materials which might help her defense; it changed the charges against her on more than one occasion, and the same charge disappeared then reappeared just before the hearing, again making it difficult to prepare a defense; and the hearing process lasted for six months before ending in settlement on 10 August 1992. The delay was due to numerous recesses, continuances, etc., in order for the school board to add witnesses and members to the review board.

In settling the dispute, Dickason and YISD agreed that the charges would be dropped, and Dickason would be "voluntarily assigned" for the 1992-93 school year at another high school as an instructor in the Dropout Recovery program and as a coach. (The agreement provided, however, that "[n]othing herein precludes ... Dickason's filing suit on any claim.") After, and pursuant to, this agreement (and at least until trial in November 1995), Dickason was the Program Coordinator of the Dropout Recovery program. But, she declined many coaching positions during school year 1992-93.

On 16 February 1993, Dickason filed her first charge with the EEOC, claiming that her suspension on 21 August 1991 had caused her damage; that the assignment with the Dropout Recovery program paid less than her pre-suspension assignments as a teacher and coach; and that she "was told that [her] suspension was because of immorality", but that she believed it was based instead on discrimination because of her gender. That July, she filed her second charge, claiming that she had learned approximately ten days earlier that she had been denied a promotion to the position of volleyball coach at another YISD high school; that she had not been told why; and that she believed the reason for not being selected was retaliation because of her first (February 1993) EEOC charge.

Shortly after filing her second EEOC charge (for claimed retaliation), Dickason filed an action in district court against YISD and her above-referenced assistant coach, Fierro, claiming violation of Title VII and Title IX of the Civil Rights Act of 1964, and of 42 U.S.C. § 1983.

Defendants were granted summary judgment on the § 1983 claim in early November 1995, just before trial began; the claim against Fierro was dropped on the first day of trial. And, when Dickason completed her case-in-chief, YISD was granted judgment as a matter of law on the retaliation claim under Title VII and Title IX. Dickason's discrimination claim under Title VII against YISD, however, went to the jury, which found that her sex was a motivating factor in the decision to suspend her. It awarded $7,820 for loss of future earnings and $392,180 for pain,

suffering, and mental anguish (award reduced to $300,000 pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b)(3)(D)).

## II.

Among other challenges to the judgment, YISD contends that the EEOC charge in issue (for discrimination) was not timely filed. (As noted, the first charge was for discrimination; the second, filed five months later, for retaliation. And as discussed, only the discrimination claim, based on the first charge, was allowed to go to the jury. Timeliness, premised on the second charge (retaliation), is not claimed by Dickason; nor would it be a valid basis for timeliness. Again, the retaliation claim was dismissed when Dickason completed her case-in-chief.)

In Texas, a charge must be filed with the EEOC within 300 days of the complained-of action. 42 U.S.C. § 2000(e)-5(d); 29 C.F.R. § 1601.70. This period is longer than the normal 180 days, because Texas has opted to be a "deferral" State, which allows it to expand the period in this way. If there is no actionable conduct within the 300 day period preceding the filing of the charge, and no grounds for finding a "continuing violation" within that period, then the charge, and the action which arises from it, must both fail. *See Delaware State College v. Ricks,* 449 U.S. 250 (1980).

## A.

A sub-issue is whether YISD waived this timely filing defense by failing to raise it in its answer. "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of

limitations, is subject to waiver, estoppel, and equitable tolling". *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982). Waiver may occur where the defendant fails to raise the timeliness issue in its answer. FED. R. CIV. P. 8(c). On the other hand, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise, ... technical failure to comply precisely with Rule 8(c) is not fatal". *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)(citing, *Jones v. Miles*, 656 F.2d 103, 107, n.7 (5th Cir. 1981)).

Therefore, YISD did not waive the timeliness issue if it was raised at trial such that Dickason was not unfairly surprised. Restated, YISD must have raised the issue at a "'pragmatically sufficient time' and [Dickason] was not prejudiced in [her] ability to respond" to the issue. *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986). An issue may be raised at the "pragmatically sufficient time" in either of two ways: (1) by both parties' introducing, without objection, evidence at trial concerning the issue; and (2) where the issue is a legal one, not requiring extensive factual analysis, so that the reviewing court may easily address the issue without reopening trial proceedings. *Id*. at 418.

Dickason consistently grossly misstated the date of her filing the first EEOC charge. In her original and first amended complaints, and in the pretrial order, Dickason claimed that she had filed it on 27 October 1992. (We note that this date is 290 days after the 10 January 1992 notice to Dickason of the YISD charges against her, and would put her just inside the requisite

300 days from the last complained of activity.) Dickason also listed this erroneous date in her pretrial list of *contested issues of fact*. She also listed whether she filed within 300 days of the last act of discrimination *as a contested issue*. It is little wonder, then, as discussed *infra*, that YISD offered evidence on this issue at trial, and that Dickason did not object to its admission. Moreover, Dickason was cross-examined about the timeliness issue, and her attorney questioned her about her reasons for waiting to file.

In sum, there was notice of the defense, and an opportunity to present evidence on the issue. Again, when YISD presented the timeliness evidence, Dickason never objected that it was irrelevant, as it would have been had the parties not been trying the timeliness issue.

Also, YISD raised the issue in a post-trial motion for judgment, and Dickason did not object on the basis of waiver. (Nor did she do so in her brief here.) Although the trial court stated summarily in ruling on this motion that it did "not reach the timeliness issue", we can state with certainty, based on the motion, and the evidence at trial on which it relied, that Dickason was on notice before and during trial that the timeliness of her first EEOC charge (for discrimination, the only issue submitted to the jury) was at issue. Further, the application of the timely filing requirement is not a detailed factual issue which requires the development of further evidence. Instead, the issue will depend on what events, according to the jury, constituted

violations of Title VII, and when those events occurred in relation to Dickason's first EEOC charge filing date. We have in the record, therefore, all that is required to examine the timeliness issue.

As discussed, the record reveals that Dickason was well aware that her late filing was an issue. She alleged, incorrectly, in her first amended complaint that she had filed her first EEOC charge on 27 October 1992. (Her original complaint listed the same erroneous date.) Despite the fact that the date she claimed to have filed her first EEOC charge would have made the discrimination claim timely, she complained also, from the early stages of the litigation, of continuing violations even though she admits that the procedure she claims constituted a continuing violation, the due process hearing, resulted in her reinstatement with YISD.

As also noted, Dickason was cross-examined about the timing of the first EEOC charge without objection. She even offered her own testimony on the subject, stating she filed the first EEOC charge so late because she "wasn't sure what I was going to do. The charges had finally been dropped and everything". And as further noted, Dickason never contended that the timely filing issue was not raised in YISD's answer, and on appeal did not even claim a possible waiver of the timeliness issue, even though YISD raised the issue in its post-trial motion for judgment (to which she did not respond that the issue was waived).

Moreover, YISD's motion for judgment at the close of Dickason's case-in-chief contended that many of the asserted bases

for Dickason's discrimination claim were not mentioned in, or reasonably related to, her first EEOC charge, and therefore were not cognizable in district court.  This, of course, bears on the timeliness issue, as discussed *infra*.  (The motion also maintained that Dickason had not made a prima facie showing of retaliation. As noted, judgment was granted to YISD on the retaliation claim.)

Indeed, it was not until the district court later framed the possible discrimination bases for the jury interrogatory, as discussed *infra*, that the timeliness issue at hand was solidified. For the jury charge, the court refused to include the due process hearing, which fell easily within the limitations period, as a possible basis for discrimination.  This jury charge ruling provided the springboard for the timeliness issue presented in YISD's post-verdict motion for judgment.  True, this point should have been advanced earlier in the trial; but, we are not totally unsympathetic to YISD's plight during trial as Dickason's claims and sub-claims kept shifting and disappearing.

Finally, we note again that Dickason did not raise the waiver issue in her brief here, and did not object at trial to YISD questioning her about timely filing.  Had she objected at trial, when YISD was putting on evidence regarding the issue, YISD could have amended its answer to include the affirmative defense of an untimely filing.  As she did not object then (or even in her brief on appeal), and based on the record, she has waived, for purposes of appeal, contesting the belated express assertion by YISD of the timely filing issue.  *See Hamilton v. Komatsu Dresser Industries,*

*Inc.*, 964 F.2d 600, 603 n.1 (7th Cir.) **cert. denied**, 506 U.S. 916 (1992).

In addition, Dickason tried the issue by consent. That occurs when both parties recognize that the issue entered the case at trial; when evidence was entered regarding the issue without objection; and when a finding of trial by consent would not prejudice the opposing party. *E.g.,* **United States v. Shanbaum**, 10 F.3d 305, 312-13 (5th Cir. 1994); **Haught v. Maceluch**, 681 F.2d 291, 305-06 (5th Cir. 1982). As discussed, both sides knew timeliness was at issue, as Dickason was examined both on direct and cross on the issue; this evidence was admitted without objection (in a trial replete with objections); and this ruling does not prejudice Dickason, as it merely allows us to examine the timeliness of her first EEOC charge, an issue she raised and about which she submitted evidence, and which Title VII instructs us to examine. In other words, we will not find prejudice to a party under these circumstances; here the party complaining of failure to raise a Rule 8(c) defense listed the possible defense pretrial as a contested issue.

B.

In order to examine the timeliness of Dickason's first EEOC charge, we must "identify precisely the 'unlawful employment practice' of which [s]he complains". **Delaware State College**, 449 U.S. at 257. Dickason's first charge was filed on 16 February 1993, more than 500 days after her 21 August 1991 suspension. It was filed more than 300 days after her 24 September 1991

- 10 -

notification that the YISD charges would include the unauthorized possession of prescription pain-killers. It was filed more than 300 days after her 1 October 1991 meeting with the Superintendent. The only possibly relevant events that happened within the 300 day period before the first EEOC charge filing was the due process hearing and settlement which resulted in Dickason's full reinstatement.

However, as noted, the court submitted, and the jury found, discrimination only in the "handling of the investigation, suspension, proposal for termination, and ... decision to remove" Dickason as coach. She requested that her challenges to the due process hearing be submitted to the jury as possible Title VII discrimination; *but, as noted, the district judge refused to allow that issue to go to the jury, despite Dickason's objections*. In short, the due process hearing, and therefore whether any actions by YISD took place within 300 days of the first EEOC charge filing, was not an issue overlooked by the trial court. This matter was presented thoroughly and repeatedly.

None of the events which the jury found discriminatory occurred within 300 days of Dickason's first EEOC charge filing. It would appear, then, that none of the acts which could have constituted the violation occurred within the limitations period.

### C.

There are, however, two exceptions to this Title VII time-bar. The first is when the "original violation occurred outside the

statute of limitations, but is closely related to other violations that are not time-barred". ***Hendrix v. City of Yazoo City, Miss.,*** 911 F.2d 1102, 1103 (5th Cir. 1990)(applying "continuing violation" theory to Fair Labor Standards Act actions, and dismissing argument that the standard is different for Title VII actions). The second is when "an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations". ***Id.*** at 1103.

Dickason contends that her case, for which the only event which occurred within the limitations period was her due process hearing/reinstatement, presents a continuing violation situation. She maintains that the due process hearing constituted Title VII discrimination because she faced procedural hurdles that male employees did not. However, as noted, *the trial judge ruled that this due process hearing discrimination claim not be examined by the jury*. And, Dickason does not contest this ruling. The jury found discrimination for the events submitted to it, but necessarily could not have found discrimination for the due process hearing. Accordingly, we need not make a detailed analysis of either of the theories of continuing violations; obviously, in the absence of at least one violation occurring in the limitations period, neither theory can apply.

The requirement that some actual violation occur during the limitations period is stated for both parts of the ***Hendrix***

formulation; the first requiring close relation of violations outside the period to *violations* within the period; the second requiring repetition of *violation*, and stating that the new period only begins with new *violations*, which must themselves be within the period.  **Hendrix,** 911 F.2d at 1103.

Furthermore, in **Trevino v. Celanese**, our court noted that the "mere perpetuation of the effects of time-barred discrimination does not constitute a violation of Title VII *in the absence of independent actionable conduct occurring within the statutory period*".  701 F.2d 397, 403 n.7 (5th Cir. 1983)(emphasis added). As noted, the jury was precluded from even determining if any actionable conduct took place within the statutory period.  In the absence of such actionable conduct, Dickason cannot prove a continuing violation.  Any continuing effects of conduct which occurred outside the prescriptive period do not save her first EEOC charge.

Finally, the Supreme Court has stated, and our court has often noted, that where, as here, the triggering, time-barred event is facially neutral, and the actions taken within the limitations period are also, as here, facially neutral, and merely give effect to prior discrimination, they do not constitute a continuing violation. **Lorance v. A T & T Technologies, Inc.**, 490 U.S. 900 (1989); *e.g.,* **Russell v. Bd. Of Trustees of the Firemen, Policemen, and Fire Alarm Operators' Pension Fund of Dallas, Texas,** 968 F.2d 489, 493 (5th Cir. 1992) **cert. denied**, 504 U.S. 914 (1993); **Hendrix**, 911 F.2d at 1104.  This rule is tantamount to saying that,

when the only discriminatory acts take place outside the limitations period, there is, quite literally, no "continuing violation", because there is no violation within the period. Dickason's case falls squarely within this rule. Without a finding that the due process hearing was discriminatory, the hearing process could only have given effect to the discriminatory acts which preceded it. Those acts, however, fall outside the prescriptive period. The fact that the due process hearing *could* have given them effect (although it did not -- Dickason was reinstated as a result of the hearing) does not give rise to a Title VII claim for the hearing itself.

### III.

For the foregoing reasons, the judgment in Dickason's favor is **REVERSED** and judgment is **RENDERED** for the Ysleta Independent School District.

*REVERSED and RENDERED*