# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 18-20465

—————

United States Court of Appeals
Fifth Circuit

**FILED**

July 26, 2019

Lyle W. Cayce
Clerk

LILLIAN SMITH,

> Plaintiff - Appellant

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,

> Defendant - Appellee

—————

Appeal from the United States District Court
for the Southern District of Texas

—————

Before OWEN, SOUTHWICK, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Lillian Smith sued her insurer, Travelers, for contractual and statutory violations arising from the denial of her commercial property insurance claim. Travelers asserted a limitations defense. While Smith concedes that Travelers sent her an unambiguous denial letter, she insists that her causes of action did not accrue until months later because Travelers agreed, upon her request, to re-investigate the property damage. Smith also urges that Travelers waived its limitations defense by failing to raise it until litigation had been underway for two years. The district court granted summary judgment for Travelers. We affirm.

No. 18-20465

## I.     Factual Background

Plaintiff-Appellant Lillian Smith ("Smith") had a contract with Defendant-Appellee Travelers Casualty Insurance Company ("Travelers") for commercial property insurance. According to Smith, a lightning strike caused damage to the foundation and air conditioning unit on her property on August 27, 2013. On September 5, 2013, she submitted a claim to Travelers. Travelers acknowledged receipt of the claim two days later, in a letter sent to Smith.

Throughout September and October, Travelers retained engineers to inspect the damage and determine its cause. Travelers regularly kept Smith apprised of the investigation. During this time, Smith hired her own engineering consultant, with whom Travelers kept in regular contact as well.

Smith's consultant took the position that the damage could only have been caused by lightning. Travelers's consultants disagreed; electrical engineers concluded that the AC unit damage was attributable to "wear and tear" and structural engineers traced the foundational cracking to "compacting and shifting soils," both of which were excluded from coverage under the policy. Smith refused to accept those findings. She accused the engineers of being "only hired to do work for the insurance companies" and warned that she would "see [Travelers] in court."

On November 13, 2013, Travelers sent a letter to Smith stating, "Base[d] on the policy language . . . , the findings of the inspection, and the expert reports received, we will be unable to provide coverage for your claim as the damages sustained are excluded in the policy[.]"The letter explained that Travelers had "conducted a [lightning] strike report to determine if there were any strikes in the area" and found that the "closest recorded strike was over 3 miles away." The letter also reported that Travelers's consultant engineers had determined that the property damage was caused by "wear and tear/breakdown" and "shifting and earth movement," which were both

2

excluded from coverage under the policy. The parties agree that this letter communicated the denial of Smith's claim.

Nine months passed during which Travelers made no payments to, and heard nothing from, Smith with regard to the policy. On August 11, 2014, Smith's counsel sent Travelers a letter, which stated that it served as "notice of [Smith's] claim" and an opportunity "to resolve this matter without litigation." The letter explained that Smith had hired another engineer who had examined the property in December 2013[1] and determined (like her first engineer did) that the damage was caused by a lightning strike. Attached to the letter was Smith's second engineer's report, dated April 24, 2014.

The August 2014 letter from Smith's counsel alleged that Travelers had committed various contractual and statutory violations—for example, that Travelers had "failed to in good faith attempt to bring about a prompt, fair, and equitable settlement of a claim once its liability became reasonably clear" and failed to "provide Ms. Smith with an explanation as to why coverage was denied." The letter also accused Travelers of "refus[ing] to pay a claim without conducting a reasonable investigation." In closing, the letter advised that Smith preferred to resolve the matter "without filing suit," and stated a settlement demand. "If this sum is not paid within 60 days of receipt of this notice," the letter warned, "suit will be filed against you."

Counsel for Travelers responded to the letter on October 13, 2014. Because this response is central to the issue on appeal, we quote its relevant content in full:

> Your letter fails to provide Travelers with proper notice of a claim under the referenced statutes. The letter sets forth only conclusory allegations of underpayment and does not provide adequate details

---

[1] The letter states that the examination took place on December 2, *2014*" (emphasis added). That error seems to have carried over to the district court's opinion. The engineer's report itself presumably reflects the correct examination date of "December 2, *2013*" (emphasis added).

of any claimed violation of the Insurance Code or DTPA. It does not identify any covered damages that are claimed to have been underpaid, the amounts by which any such damages are claimed to have been underpaid, or any factual basis for your demand . . . .

While your letter does not contain any additional or different information which would cause Travelers to change its position in this matter, if you will provide me some dates that the property is available for inspection, we will hire a third engineer to conduct an investigation as to the cause of claimed damage at the property in an attempt to resolve this matter amicable [sic]. However, please be advised that Travelers continues to reserve all its rights, specifically including, but not limited to its contractual right of appraisal in the event that the parties are unable to reach agreement regarding the "amount of loss" should the claimed damage be found to be a result from a covered cause of loss.

On April 9, 2015, Travelers emailed Smith a copy of its third engineer's report, which supported Travelers's original position that the property damage was not caused by lightning. The email advised that Travelers's counsel would "have a more formal response letter" sent to Smith soon. None was ever sent.

Upon receipt of the third engineer's report, Smith's counsel sent an email to Smith that said, "Please review and respond as it looks like we are worlds apart."

## II.    Procedural History

On January 25, 2016, Smith filed suit against Travelers in Texas state court, alleging breach of contract as well as multiple causes of action under the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA") and the Texas Insurance Code. In May, Travelers filed a state court answer generally denying the allegations. The same month, Travelers filed a notice of removal.

Two months later, the federal district court entered a Docket Control Order that included deadlines for discovery, expert reports, non-dispositive motion filing, the joint pretrial order, and docket call. On the Docket Control

Order form, the word "None" was written next to a space indicating a deadline for motions to amend pleadings.

Six months passed. In February 2017, the parties submitted a joint motion to continue all Docket Control Order deadlines, which the court granted.

On June 15, 2017, Travelers filed its first federal court answer, which asserted various affirmative defenses. The "Second Defense" was entitled "Policy Provisions Limit or Preclude Coverage." That defense stated, in relevant part:

> Some or all of Plaintiff's claims are excluded or limited by applicable policy terms, conditions, and exclusions contained in the Policy. The insurance policy issued by Travelers contains exclusions, provisions, conditions, and endorsements that preclude or limit coverage, in whole or in part, including, but not limited to, the following:
>
> **4. Legal Action Against Us**
>
> No one may bring a legal action against us under this Coverage Form unless:
>
> [. . .]
>
> b. The action is brought within 2 years and one day from the date the cause of action first accrues on the date of the initial breach of our contractual duties as alleged in the action.

Over the next five months, the parties submitted two more joint motions for continuance, both of which were granted. In late January 2018, counsel for Travelers sent Smith's counsel an email stating:

> I would like to clean up pleadings. Will you agree to me doing so? I think I need your consent under the rules so I do not have to file a Motion to Leave. If not, I can file the Motion to Leave, just thought this would be easier.

No. 18-20465

Smith's counsel responded, "Yes, I agree." On February 7, Travelers filed its Second Amended Answer, which specified that the amendment was "consistent with Plaintiff's written consent."[2] The Second Amended Answer included the same Second Defense as the first answer did, and added the following defense:

> TENTH DEFENSE
> Statute of Limitations
> Pursuant to Fed. R. Civ. P. 8, Travelers pleads the affirmative defense of statute of limitations barring Plaintiff's claims and suit pursuant to Tex. Bus. & Com. Code §17.565 and/or §15.50(c) and (d), and Tex. Insur. Code §541.162, and Tex. Civ. Prac. & Rem. Code §16.003(a), and the Policy's contractual limitations for any alleged breach of contract action as cited above, Second Defense of Policy Provisions Limit or Preclude Coverage, page 10.

Three weeks later, Travelers moved for summary judgment on its affirmative defense of limitations. Over the next five weeks, Smith was granted two unopposed extensions of time to respond to the motion.

In July 2018, the district court granted Travelers's motion for summary judgment.[3] Smith timely filed a notice of appeal.

On appeal, Smith urges that Travelers waived its affirmative limitations defense by failing to raise it in the First Amended Answer or anytime, in fact, before the litigation had been underway for two years. In the alternative, Smith argues that a genuine factual dispute remains over when her claims accrued because Travelers's "correspondence and reinvestigation" would have led a reasonable person to conclude that the November 2013 denial letter "had been rescinded, revoked, or withdrawn pending additional investigation."

Travelers counters that its First Amended Answer provided fair notice to Smith of the limitations defense. Moreover, according to Travelers, Smith

---

[2] *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.").

[3] Travelers had filed a motion for summary judgment on causation in May 2018. The district court disposed of it as "moot" in its order granting summary judgment on limitations.

waived any argument that Travelers had waived its affirmative defense when she consented unqualifiedly to Travelers's amendment of the First Amended Answer. Further, Travelers insists that Smith's claims were time-barred because Travelers unequivocally denied coverage in November 2013 and never indicated that such denial had been altered.

## III.  Standards of Review

The waiver ruling—that is, the district court's determination that Travelers did not waive its limitations defense—is reviewed for abuse of discretion. *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 & n.1 (5th Cir. 2017); *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014).

The merits question—whether Smith filed suit after the limitations period had run—is presented as a challenge to the district court's grant of summary judgment. Therefore, it receives *de novo* review, with all inferences drawn in favor of Smith. *HSBC Bank USA, N.A. as Trustee for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018).

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## IV.  Discussion

### A. Waiver

Generally, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." Fed. R. Civ. P. 8(c). Failure to do so may result in waiver. *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983). This "play in the joints"

is permissible because "Rule 8(c)'s purpose is to give the plaintiff fair notice." *Motion Med.*, 875 F.3d at 771 (quoting *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)).

"[T]he defendant does not waive an affirmative defense" if the issue is raised "at a pragmatically sufficient time," and if the plaintiff "was not prejudiced in its ability to respond." *Lucas*, 807 F.2d at 418 (quoting *Allied*, 695 F.2d at 856). Proper amendment to an answer, pursuant to Rule 15(a), is one way—though not the only way—to preserve an affirmative defense. *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000) (explaining that, to avoid waiver, the defendants "should have either pleaded [the defense] in their original answer or sought to amend their answer pursuant to Rule 15(a)" but reasoning that it was sufficient for the defendants to have "raised the defense in a motion for summary judgment" because it was a "pragmatically sufficient time" and the plaintiff "was not prejudiced"). *See also Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) ("[U]nder Rule 8(c) we do not take a formalistic approach to determine whether an affirmative defense was waived. Rather, we look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial."). "[T]he prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is)." *Rogers*, 521 F.3d at 387.

The district court recognized this standard and applied it carefully, concluding that Travelers did not waive its limitations defenses. As the district court observed, Travelers's First Amended Answer highlighted the contract's limitations provision:

No. 18-20465

> No one may bring a legal action against us under this Coverage Form unless . . . [t]he action is brought within 2 years and one day from the date the cause of action first accrues . . . .

Even though the exact term "limitations" does not appear therein, the plain language of that section gives "fair notice" of Travelers's intent to assert a contractual limitations defense. *Motion Medical*, 875 F.3d at 771 (citing *Rogers*, 521 F.3d at 387) ("Rule 8(c)'s purpose is to give the plaintiff fair notice."). *Cf. Starcraft Co., A Div. of Bangor Punta Operations v. C.J. Heck Co. of Tex.*, 748 F.2d 982, 990 n.11 (5th Cir. 1984) (a defendant is "not required to state certain magic words in order to assert a successful defense").

Whether Travelers waived *statutory* limitations defenses—that is, limitations defenses to the DTPA and Texas Insurance Code claims as opposed to the breach-of-contract claim—is a slightly trickier question. The First Amended Answer made no mention of Travelers's intent to press statutory limitations. Nevertheless, as the district court found, the Second Amended Answer cured that problem in time to prevent waiver.

As summarized above, after Travelers filed its First Amended Answer in June 2017, the parties submitted two joint motions for continuance, both of which were granted. In January 2018, counsel for Travelers sent an email asking consent to "clean up pleadings," which Smith's counsel granted. On February 7, Travelers filed its Second Amended Answer, which expressly stated both statutory and contractual limitations defenses. At that time, the discovery deadline was still approximately four months away.[4]

---

[4] Smith's suggestion that discovery "was to be completed by August 25, 2017" is perplexing. That had been a discovery deadline earlier in the case, before the parties jointly moved for continuance. But the docket control order that had been in effect for three months by the time Travelers filed its Second Amended Answer specified that discovery would be due on June 5, 2018.

To support the argument that this amendment failed to raise the limitations defense "at a pragmatically sufficient time," and that Smith was "prejudiced in [her] ability to respond," *Lucas*, 807 F.2d at 418 (quoting *Allied*, 695 F.2d at 856), Smith emphasizes that the amendment took place "more than two years after the [case's] inception" and "long after the parties had begun engaging in costly discovery practices." These arguments fall short.

First, with respect to the "more than two years" point, Smith was largely responsible for the amount of time that had elapsed by the time the Second Amended Complaint was filed. This is not a case where a foot-dragging defendant injected a new defense at the eleventh hour. Rather, this case was prolonged in large part because three unopposed continuances were filed due to scheduling issues traceable to Smith. Accordingly, Smith's assertion of prejudice on the grounds that the case had been alive for more than two years is unpersuasive.

Second, that the parties had already begun discovery—and that the discovery deadline was approximately four months away—are not reasons to find abuse of discretion here. In *Pasco ex rel. Pasco v. Knoblauch*, we affirmed a no-waiver ruling when the defendant first raised an affirmative defense of qualified immunity in a summary judgment motion filed two months before discovery was due. 566 F.3d at 578. In the instant case, there was twice as much time remaining before discovery closed.

Finally, in rebutting Smith's assertion of unfairness, Travelers accurately points out that Smith consented "unqualifiedly" to the Second Amended Answer without inquiring "as to the nature, scope, or text of any proposed amendment" and without requesting to preview a draft of the proposed amendment. We note that Travelers's counsel's email was somewhat misleading insofar as it stated that the amendment would "clean up pleadings" rather than raise a new defense. But Smith was under no obligation to consent

to Travelers's opaque request—especially without inspecting a draft. Ultimately, we cannot say that any misdirection by Travelers amounted to a level of prejudice that would make the district court's conclusion reversibly erroneous. And the overall timeframe of the amendment, in the context of this litigation, is consistent with our caselaw.

In sum, we agree with the district court that all of Travelers's limitations defenses were raised "a pragmatically sufficient time" and that Smith "was not prejudiced in [her] ability to respond." *Lucas*, 807 F.2d at 418 (quoting *Allied*, 695 F.2d at 856). Accordingly, we proceed to the merits of those defenses.

## B. Whether Limitations Precludes Recovery

As this is a diversity case containing only state-law claims, Texas law governs. *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017).

### 1. Limitations Period

The limitations period for all claims in this case is essentially two years—more precisely, it is two years for the statutory claims and two years plus one day for the breach-of-contract claim. *See* TEX. BUS. & COM. CODE § 17.565 (establishing DTPA's two-year limitations period); TEX. INS. CODE § 541.162 (establishing Texas Insurance Code's two-year limitations period); TEX. CIV. PRAC. & REM. CODE § 16.004(a) (setting four-year default limitations period for breach of contract claims); *id.* § 16.070(a) (permitting contracting parties to modify the four-year default period so long as it remains at least two years; here, the contract provided that an action must be brought "within 2 years and one day from the date the cause of action first accrues").

In Texas, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). "[A] cause of action generally accrues when a wrongful act causes

some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). This is often called the "legal injury rule." *See, e.g.*, *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018).

Generally, in first-party insurance cases such as this one, "limitations begin to run on the date coverage is denied." *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 373 (5th Cir. 2011) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828–29 (Tex. 1990)). Although the denial-accrual date is usually "a question of law," the Texas Supreme Court has acknowledged that it "may present questions of fact to be determined on a case-by-case basis." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 222 (Tex. 2003).

Texas has carved out "a very limited exception" to the legal injury rule called the "discovery rule." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). "The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Id.* Texas condones its use "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Id.*

Travelers argues that Smith's claims accrued on November 13, 2013, when Travelers sent the denial letter. Smith refutes that accrual date on the ground that Travelers effectively withdrew its denial by later agreeing to re-investigate her claim. She contends that the statute of limitations "was tolled because of the continuous back-and-forth correspondence between the parties and did not begin to toll until April 9, 2015."

Ordinarily, the word "toll" means "to stop the running of; to abate ('toll the limitations period')." *Toll*, BLACK'S LAW DICTIONARY (10th ed. 2014). Tolling has been described as "analogous to a clock stopping and then restarting." 51 Am. Jur. 2d Limitation of Actions § 148. By contrast, the word

"accrue" is usually defined as "[t]o come into existence as an enforceable claim or right." *Accrue*, BLACK'S LAW DICTIONARY (10th ed. 2014); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App. 2008) ("'Accrual' refers to the date when a limitations period begins to run.").

Texas's "discovery rule" technically extends the limitations period by postponing the accrual date—*not* by recognizing accrual and then applying what the sources above define as tolling. *See Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001) (noting that "tolling limitations is conceptually distinct from applying the discovery rule to delay commencement of limitations"). In other words, the "discovery rule" starts the limitations clock at a later time than it would otherwise start; it does not pause a clock that started as usual. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) ("Deferring accrual and thus delaying the commencement of the limitations period is distinct from suspending or tolling the running of limitations once the period has begun.").

We interpret Smith's argument to be that the discovery rule delayed the accrual date. Smith does not press any timeliness argument other than this one. She never argues, for example, that Travelers fraudulently concealed its wrongdoing, which "tolls limitations 'because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.'" *Gonzales v. Sw. Olshan Found. Repair Co., LLC*, 400 S.W.3d 52, 58 (Tex. 2013) (quoting *S.V.*, 933 S.W.3d at 6). Nor does she flesh out an argument for equitable tolling, which can apply "in situations where a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App. 2005). Her only argument for

timeliness is that the discovery rule delayed the accrual date to April 9, 2015 (the date Travelers sent her the later engineer's report).

We first address whether the discovery rule applies here.

## 2. Discovery Rule

"The discovery rule is the legal principle which, when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). The Texas Supreme Court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006); *see also S.V.*, 933 S.W.2d at 25 (noting that applications of the discovery rule "should be few and narrowly drawn").

Motivated by a goal of "bring[ing] predictability and consistency to the jurisprudence," Texas takes a "categorical approach when determining whether the discovery rule applies to certain types of claims." *Apex Towing*, 41 S.W.3d at 122. "Using such an approach means [that courts] do not determine when a particular injury was actually discovered in any particular case, but rather whether that case is of the type to which the discovery rule applies, based on whether the policy reasons behind the rule are served by applying the rule in that type of case." *Id.* Applicability of the discovery rule boils down to a two-pronged inquiry: "(1) whether the injury is inherently undiscoverable; and (2) whether evidence of the injury is objectively verifiable." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).

"A wrong or injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Poth v. Small, Craig & Werkenthin, L.L.P.*, 967 S.W.2d 511, 515 (Tex. App. 1998). In *S.V.*, the Texas Supreme Court cited various examples of cases where the "inherently undiscoverable" element was satisfied, including:

*Willis*, 760 S.W.2d at 645 (lawyer's error could not be discovered by client who was ignorant of the law); *Nelson* [*v. Krusen*, 678 S.W.2d 918, 923 (Tex. 1984)] (malpractice in muscular dystrophy gene screening could not be discovered by parents until child showed symptoms); *Kelley* [*v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1986)] (false credit report could not be discovered until credit denied); *Hays* [*v. Hall*, 488 S.W.2d 412, 414 (Tex. 1972)] ("One who undergoes a vasectomy . . . and then after tests is told that he is sterile, cannot know that he is still fertile . . . until either his wife becomes pregnant or he is shown to be fertile by further testing."); *Gaddis* [*v. Smith*, 417 S.W.2d 577, 578 (Tex. 1967)] ("it is often difficult, if not impossible, to discover that a foreign object has been left within the body within the statutory period of limitation") . . . *Houston Waterworks* [*v. Kennedy*, 8 S.W. 36, 37 (Tex. 1888)] (cut into plaintiff's building not discoverable until walls cracked).

933 S.W.2d at 6–7. The Court explained, "The common thread in these cases is that . . . the wrong and injury were unknown to the plaintiff because of their very nature . . . ." *Id.* at 7.

Smith's alleged injury is different in kind. Her property damage was obvious, she promptly filed a claim, an investigation followed, and then she received an *unambiguous* denial letter.[5] In *Davis v. Aetna Casualty & Surety Co.*, a Texas appellate court confronted a similar situation and found the discovery rule inapplicable. 843 S.W.2d 777 (Tex. App. 1992). The court explained, "Application of the discovery rule is limited to those cases where there has been no outright denial of the plaintiff's claim." *Id.* at 778.[6]

We conclude that Smith's injury was inherently discoverable and therefore need not reach the question of whether it was objectively verifiable. The discovery rule is unavailable in this case.

---

[5] We do not have occasion to address whether an insurer's purported denial, if ambiguously communicated, would trigger the discovery rule. In this case, Smith acknowledges that Travelers outright denied her claim on November 13, 2013.

[6] *Cf. Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) ("In making an *Erie* guess in the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance.").

### 3. Accrual

Having rejected the applicability of the discovery rule, we analyze limitations under the default framework. "A claim for breach of an insurance contract accrues and limitations begin to run on the date coverage is denied." *Citigroup*, 649 F.3d at 373 (citing *Murray*, 800 S.W.2d. at 828–29). "A plaintiff's cause of action under the Texas Insurance Code for unfair claims settlement practices or under the DTPA based on denial of insurance coverage accrues on the date that the insurer denies coverage." *Knott*, 128 S.W.3d at 221. Therefore, all causes of action in this case accrued on the date that coverage was denied. The question is whether the district court properly concluded that there is no genuine dispute of fact that Travelers denied Smith's claim on November 13, 2013.

Smith has acknowledged that an unambiguous denial letter was sent on November 13, 2013. But, Smith argues, Travelers's subsequent communications "would leave a reasonable person . . . to conclude that the denial had been rescinded, revoked, or withdrawn pending additional investigation." We now address whether an insurer's post-denial willingness to re-investigate the claim, and actual re-investigation, operates to nullify the prior denial-accrual date.

On this issue, *Pace v. Travelers Lloyds of Texas Insurance Co.* is instructive. 162 S.W.3d 632, 634 (Tex. App. 2005). In *Pace*, after the homeowner submitted an insurance claim, the insurer sent back a letter stating:

> After careful consideration of all information available to us, we have determined that the damage to your property is not afforded coverage under the insurance policy.
>
> Our investigation indicates that the damage has resulted from settlement and/or movement of the structure due to causes which

16

are not attributable to accidental leakage from the plumbing system.

Based on the results of our investigation and the Exclusions referenced above, we regret that we will be unable to make any payment for the cost to repair damages that are attributable to foundation movement.

*If you have additional information that you feel may have an impact on this coverage decision or should you have any questions concerning this claim please forward same to me....*

*Id.*at 633–34. The claimant reacted to that letter by hiring an engineer who investigated the damage and determined that it resulted from a covered cause. *Id.*at 634. After the claimant forwarded the retained engineer's report to the insurer, the insurer wrote to the claimant:

In a continued effort to determine if there is coverage for the damage being claimed in the above mentioned loss we requested [that a consultant] inspect and reevaluate the information you submitted and the original [report].

Enclosed for your review is a copy of [our consultant's] response to the additional information. [The original] findings remain unchanged.

Based on our review of your claim file[,] we regret our position remains the same.

*Id.* The claimant argued that the italicized portions of these communications revealed that the insurer "had been continuing to evaluate the claim." *Id.* at 635. According to the claimant, that created a fact issue over when the claim was denied. The court disagreed, reasoning:

[I]t does not necessarily follow that: (1) because a decision has been made, it cannot be subsequently changed; or (2) because a decision can later be changed, it has not been made. Therefore, . . . the fact that the [letter] left open the possibility that new information could potentially cause a different decision to be reached [did not create] uncertainty whether a decision had been made.

*Id. Pace* focuses the accrual inquiry on whether an unambiguous denial has been communicated and then asks whether there is "evidence that that decision was ever expressly or impliedly withdrawn or changed, such as by making payment or otherwise taking action inconsistent with that decision." *Id.* at 635. By concluding that its facts did not present such evidence, *Pace* clarifies that an insurer's post-denial re-investigation of property damage alone is not "taking action inconsistent with [the denial] decision." *Id.*

Similarly, here, Smith hired an engineer after receiving a denial letter, the engineer investigated the property and concluded that the damage resulted from a covered cause, and Smith forwarded the retained engineer's findings to the insurer. Then Smith received the following response from Travelers which, according to her, creates a fact issue as to when the claim was denied:

> While your letter does not contain any additional or different information which would cause Travelers to change its position in this matter, if you will provide me some dates that the property is available for inspection, we will hire a third engineer to conduct an investigation as to the cause of claimed damage at the property in an attempt to resolve this matter amicable [sic].

We disagree with Smith's assertion that this communication "would leave a reasonable person . . . to conclude that the denial had been rescinded, revoked, or withdrawn pending additional investigation." The plain language of Travelers's letter cannot support that interpretation.

Importantly, in this case, although Smith may have hoped the re-investigation would lead to a different coverage outcome, Travelers never signaled any retreat from its denial decision. To the contrary, Travelers explicitly warned that Smith's retained engineer had not presented "any additional or different information which would cause Travelers to change its position in this matter." By Travelers's express characterization, the re-investigation was designed as an "attempt to resolve this matter amicabl[y]"—

not an acknowledgment of any doubt or defect concerning the prior determination.[7]

Such facts are crucially distinguishable from the case on which Smith relies, *Pena v. State Farm Lloyds*, 980 S.W.2d 949 (Tex. App. 1998). In *Pena*, the insured filed a claim for damages related to slab foundation movement and then later filed an additional claim for new damages related to that same slab movement. *Id.* at 954. The insurance company denied the first claim but then investigated the later claim and made a payment on it. *Id.* During litigation, the insurer argued that the plaintiff's cause of action accrued from the denial of the first claim. *Id.* at 953–54. The court disagreed, explaining, "Because the slab foundation problems were essentially on-going, and its subsequent reinvestigation of and partial payment for the same reported problems, it appears the denial of the [first] claim was effectively reconsidered and withdrawn by [the insurer], thus resetting the starting date for limitations." *Id.* at 954.

Many cases have distinguished *Pena* including, notably, *Pace*. *Pace* explained, "Without evidence of either a claim for additional damages or a withdrawing or changing of the [original] decision, as in *Pena*, [the claimant] has provided us no basis to conclude that the rationale of that case has any application here." 162 S.W.3d at 635. *See also Watson v. Allstate Texas Lloyd's*, 224 F. App'x 335, 340 (5th Cir. 2007) (analogizing to *Pace* while distinguishing

---

[7] Smith points out that on April 9, 2015, Travelers sent an email confirming denial of the claim and promising that a "more formal response letter" would follow. According to Smith, Travelers's "use of the phrase 'more formal response' implies that a 'more formal' denial *or acceptance* of coverage letter from Travelers may be forthcoming . . . ." That suggestion is not well-taken. When Smith's counsel received the April 9 email and engineer's report, he forwarded it to Smith along with the remark, "[I]t looks like we are worlds apart." Thus, there was no ambiguity in Travelers's communicated position that the insurer remained committed to denying the claim. Moreover, if Smith was truly under the impression that Travelers might be accepting coverage, it is unlikely that she would not follow up about forthcoming payments or indeed communicate with Travelers at all until filing suit more than nine months later.

*Pena*) (internal citations omitted); *Sheppard v. Travelers Lloyds of Tex. Ins. Co.,* 2009 WL 3294997, at *6–7 (Tex. App. 2009); *Mangine v. State Farm Lloyds,* 73 S.W.3d 467, 471 (Tex. App. 2002); *Ocotillo Real Estate Investments I LLC v. Lexington Ins. Co.*, 2015 WL 11120866, at *3 (N.D. Tex. Jan. 9, 2015); *Browne v. Clarendon Nat'l Ins. Co.*, 2010 WL 11425553, at *5 (N.D. Tex. Aug. 30, 2010).

Here, as in *Pace*, there is no evidence that Travelers's decision "was ever expressly or impliedly withdrawn or changed." 162 S.W.3d at 635. The caselaw establishes that re-investigation alone is not an action that is "inconsistent" with the denial decision, *id.*, and it is not for us to "second-guess a State's application of its own law." *Nat'l Ed. Ass'n, Inc. v. Lee Cty. Bd. of Pub. Instruction*, 467 F.2d 447, 450 n.6 (5th Cir. 1972).

We are not unmindful of the predicament facing insurance claimants whose unsuccessful attempts to resolve disputes without litigation run them past the limitations period. To the extent the limitations period is too short to accommodate such circumstances, that concern lies with the legislature. Furthermore, Texas caselaw does not condone the practice of "string[ing] an insured along without denying or paying a claim." *Murray*, 800 S.W.2d at 828 n.2. That issue is not presented here, however; in this case, an unequivocal denial was followed only by a re-investigation along with a warning that the denial decision remained in place. No payments were made during this period. Therefore, accrual occurred on the date of unambiguous claim denial.

Because Smith's causes of action accrued on November 13, 2013, her January 25, 2016 suit was untimely, as the district court concluded.

AFFIRMED.