# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 9, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20660

———————

John Levy,

*Plaintiff—Appellant*,

*versus*

UNUM Group; Unum Life Insurance Company of America,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-82

———————————————————

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Plaintiff John Levy appeals from the district court's grant of Unum Life Insurance Company of America and UNUM Group's motion to dismiss for failure to state a claim. Because Levy's claims seeking additional disability insurance benefits are barred by the applicable statutes of limitations, we affirm.

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

**I.**

Unum Life Insurance Company of America issued Levy a disability income insurance policy (the Policy) that went into effect in December 1988. Levy filed a claim with Unum Life in July 1991 when he became disabled by depression, and Unum Life approved Levy's claim in October of that year. From that time forward, Levy has received $2,535 per month in accordance with the Policy.

In July 2009, Levy contacted Unum Life seeking additional benefits to which he believed he was entitled under the Policy.[1]  These stem from the Policy's "Automatic Benefit Increase" and "Benefit Indexing" provisions, which Levy contends entitle him to an additional $505.44 per month from the time of his disability's onset forward.[2]  As reflected in notes contained in Unum Life's internal system,[3] when Levy raised his concerns in July 2009, a company employee informed Levy over the phone of Unum Life's position that Levy was not entitled to the additional benefits he sought:

> I tried explaining that his benefit effective date was after his date of disability but he seems unconvinced this should have made a difference. . . .  He would like to speak to the Manager re[garding] this issue.

A manager spoke with Levy later that day:

> I called the insured and explained that his Automatic Increase of $152 didn't take effect until 12/12/91 which was after his

---

[1] Levy's petition and briefing make clear that he had raised the same issue with Unum Life on multiple occasions prior to July 2009 as well.

[2] Accounting for "an 18% per annum interest penalty," Levy alleges that over this timeframe, the benefits at issue are worth $4,780.827.29.

[3] These notes are contained in a file that Unum Life has kept on Levy's Policy since its inception.  Upon his request, Unum Life turned the file over to Levy in August 2020.

[d]ate of disability 7/13/91, therefore he isn't eligible to receive that benefit from this claim as his claim has been continuous. I also explained that the CPI-U Indexing was for the indexing [of] his pre-disability income to keep pace with inflation and cost of living in the event he was to be partially or residually disabled. This allows a fair comparison between his prior earning and his current earning. He understood and requested that I [summarize] our conversation in a letter to him, which I agreed to do.[4]

Despite these explanations, as Levy concedes, he continued to seek these additional benefits over the years, and Unum Life remained steadfast in its position that Levy was not entitled to them. In April 2018, after a request from Levy's counsel, Unum Life sent a letter reprising its reasons for having advised Levy in 2009 that he was not entitled to additional benefits under the Policy:

> We have reviewed our records and note that Mr. Levy called us on July 8, 2009[,] and wanted to speak with a manager regarding why he is not receiving the additional benefit of $152 and the Consumer Price Indexing (CPI-U). Our manager spoke to Mr. Levy and advised that his disability date was December 12, 1991. Therefore, he was not eligible to receive that benefit on his current claim. Our manager also explained to Mr. Levy that the Consumer Price Index for All Urban Consumers is used for indexing of his pre-disability income to keep pace with inflation and cost of living in the event he was to be residually disabled. This allows fair comparison between his prior earnings and his current earnings. Insured voice[d] his understanding at that time.

---

[4] Levy alleges that he never received this letter.

In June 2018, Unum Life sent a follow-up letter to Levy's counsel reiterating its position.

Levy filed petitions in Texas state court against, *inter alia*, Unum Life and UNUM Group (collectively, Unum) in 2018 and 2020 to conduct pre-suit depositions pursuant to Texas Rule of Civil Procedure 202. Neither Rule 202 petition led to a deposition, but the parties participated in an ultimately unsuccessful mediation in 2018.

Levy then sued Unum in December 2021 in Texas state court for breach of contract, negligence and negligent supervision, fraud, declaratory judgment, violations of the Texas Deceptive Trade Practices Act, and violations of the Texas Insurance Code. Levy's complaint makes clear that he sought recovery of the same purported benefits he believed he had been entitled to since 1991—that is, the same benefits he had requested from Unum Life multiple times between 1991 and 2009. Invoking diversity jurisdiction, Unum removed the case to federal district court. Unum then moved to dismiss Levy's claims under Federal Rule of Civil Procedure 12(b)(6), asserting that each claim was barred by its respective statute of limitations.

Considering Unum's motion, the district court reasoned that Levy's claims had accrued at least by 2009 when he "became aware of his potential injury[,]" "contacted Unum Life[,]" and "was denied the additional benefits he requested." Thus, by the time Levy filed suit in 2021, he was at least "eight years too late." Accordingly, the district court concluded that Levy's claims were time-barred and granted Unum's motion to dismiss. Levy now appeals.[5]

---

[5] Levy's notice of appeal also states an intent to appeal the district court's denial of his motion for reconsideration and new trial. Because Levy makes only a fleeting

## II.

"A district court's grant of a motion to dismiss is reviewed *de novo*." *Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, where, as here, the district court declines to exercise its equitable discretion to toll the statute of limitations, that decision is reviewed for an abuse of discretion. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015).

## III.

The dispositive issue here is when Levy's claims accrued, which is a question of law. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)). Generally, a cause of action accrues, and limitations begin to run, when facts exist that authorize a claimant to seek judicial relief. *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 542 (Tex. 2017) (citation omitted). A claim accrues when injury occurs, not afterward when the full extent of the injury may become known. *Id.* at 542–43 (citation omitted).

-----

mention of this ruling in his briefing to this court, he has forfeited any challenge to it. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief an argument on appeal.").

Levy proffers two possible accrual dates for his purported injuries. First, he asserts that his claims accrued on August 10, 2020, when his counsel received from Unum Life a copy of Levy's claim file. Levy posits that he "could not and did not discover the 'legal injury' for the basis of his claims" until that date. Alternatively, Levy points to April 17, 2018—the date on which his counsel received the letter from Unum Life explaining its July 2009 response to Levy's inquiry then that he was not entitled to the additional benefits he sought. But neither of Levy's suggested accrual dates withstand scrutiny because he indisputably had actual knowledge of his alleged injury at least by July 2009.

In Texas, an insured is deemed to know the contents of his insurance contract. *Morris Cnty. Nat'l Bank v. John Deere Ins. Co.*, 254 F.3d 538, 541 (5th Cir. 2001) (citation omitted). It is undisputed that Levy had a copy of the Policy. Unum therefore argues that Levy could have, with reasonable diligence, determined the amount and type of benefits to which he was entitled under the Policy. On this point, Unum urges that Levy had at least constructive knowledge of his injury as early as September 1991 when he received the first alleged underpayment.

We recently held in the ERISA context that a plaintiff's miscalculation of benefits claim accrued once he received a "letter explaining his monthly benefit calculation" or when he obtained "contemporaneous understanding" of the insurer's calculation. *Faciane v. Sun Life Assurance Co. of Can.*, 931 F.3d 412, 420 (5th Cir. 2019). We went on to say that "[a]ccrual of miscalculation claims is, and should remain, a case-by-case reasonableness inquiry." *Id.* (citation and internal quotation marks omitted). But we need not determine *Faciane*'s applicability to Levy's case because the record establishes that Levy had *actual* knowledge of his claims by July 2009.

Under Texas law, once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know "the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *ExxonMobil Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) (citation omitted). Levy's July 2009 exchange with Unum Life, in which he complained of underpayment and Unum Life unequivocally rejected his contentions, firmly establishes Levy's actual knowledge of the claims alleged now. Therefore, Levy's claims accrued at least by July 8, 2009.

With the accrual date established, we survey the relevant statutes of limitations. Levy's claim for negligence and negligent supervision is subject to a two-year limitations period. Tex. Civ. Prac. & Rem. Code § 16.003. So are Levy's claims for violations of the DTPA and the Texas Insurance Code. Tex. Bus. & Com. Code § 17.565; Tex. Ins. Code § 541.162. His claims for breach of contract and declaratory judgment[6] would ordinarily be subject to a four-year limitations period, but the parties agree that the Policy cabins such claims to a three-year limitations period. Finally, Levy's fraud claim is subject to a four-year limitations period. Tex. Civ. Pac. & Rem. Code § 16.004.

Thus, absent tolling, the limitations period on Levy's claims for negligence and negligent supervision, violations of the DTPA, and violations

---

[6] Texas law is clear that "[b]ecause a declaratory judgment action is a procedural device used to determine substantive rights," courts "must look to the legal remedy underlying the cause of action to determine the applicable limitations period." *Ammerman v. Ranches of Clear Creek Cmty. Ass'n*, 562 S.W.3d 622, 636 (Tex. App.—Austin 2018, no pet.) (citing *Nw. Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied)). Here, because Levy's declaratory judgment action seeks a declaration that "Levy's disability policy entitle[s] him" to the purported additional benefits at issue—the same basis as Levy's breach of contract claim—the contractual statute of limitations applies. *Id.*

of the Texas Insurance Code elapsed on July 8, 2011; for breach of contract and declaratory judgment, on July 8, 2012; and for fraud, on July 8, 2013. So Levy has overshot the relevant limitations periods by a considerable distance.

**IV.**

Having determined that Levy's claims accrued long before he filed suit, we turn now to whether Levy offers valid grounds for tolling the statutes of limitation at issue. He does not.

**A.**

We first address Levy's contention that the discovery rule applies to toll the statutes of limitations. The discovery rule operates to defer accrual "until such time as the claimant discovers, or in exercising reasonable diligence, should have discovered, facts that indicate he has been injured." *Colonial Penn Ins. Co. v. Market Planners Ins. Agency Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998). As Levy concedes, the discovery rule applies where an injury is "inherently undiscoverable, i.e., where the plaintiff did not and *could not* know of the injury." *Id.* (emphasis added). In Texas, the party seeking to benefit from the discovery rule "bear[s] the burden of proving and securing favorable findings thereon." *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993) (quoting *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988)). Further, it is well-settled in Texas law that when an alleged injury is of "the type that could have been discovered with reasonable diligence," "the discovery rule does not apply to defer accrual" of a plaintiff's claims. *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 849 (5th Cir. 2009) (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001).

Even accepting all of Levy's well-pled facts as true, as we must at the motion-to-dismiss stage, Levy's invocation of the discovery rule fails. Levy contends that he "could not and did not discover the 'legal injury' for the

basis of his claims until August 10, 2020," when his counsel received a copy of Levy's internal file. But Levy's own briefing betrays his position. First, Levy reports that between 1991 and 2009, he "contacted [Unum Life] multiple times" regarding the additional benefits he believes he was owed. He does not contest that Unum told him at least by July 2009 that he was not entitled to the benefits in question. Thus, it is undisputed that Levy knew of the basis for his claims long before August 2020. Second, Levy concedes that his counsel received a letter from Unum Life in April 2018 reiterating that it had informed Levy in 2009 that he was not entitled to the benefits he seeks. This too confirms that Levy had knowledge of his purported injury at least by July 2009. Third, Levy concedes that the file only provided him with knowledge of "the *basis* for [Unum Life's] nonpayment" of the additional benefits at issue—not that August 2020 was the first time he learned he had claims against Unum.

Taken together, Levy's briefing makes clear that the alleged injury was not "unknown to [him] because of [its] very nature[.]" *Smith v. Travelers Ins. Co. of Am.*, 932 F.3d 302, 313 (5th Cir. 2019) (citation omitted). To the contrary, *he* raised the gravamen of his claims with Unum repeatedly, and Unum repeatedly disputed his position, by July 2009. The discovery rule therefore has no bearing on this case.

**B.**

Levy alternatively argues that Unum fraudulently concealed facts from him, and as a result, he was "not on notice of [Unum's] wrongful acts until the denial on April 17, 2018[,] or when he received Unum's file on August 10, 2020." The fraudulent concealment doctrine requires Levy to prove Unum "actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (citation omitted). If fraudulent concealment is

established, the limitations period is tolled only until "the fraud is discovered or could have been discovered with reasonable diligence." *Id.* (citation omitted).

Levy argues that "Unum concealed the issue of two disability claims instead of one and of its failure to pay based on this fraud, DTPA violation, Texas Insurance Code violation, breach of contract, negligence, negligent supervision, and fraud." But Levy makes no effort to satisfy *Shell Oil Co.*'s fraudulent concealment test by explaining how Unum "knew a wrong occurred," "had a fixed purpose to conceal the wrong," or that Unum did, in fact, "conceal the wrong." *Id.* And, in any event, as detailed above, Levy knew of his potential claim for additional benefits at least by July 2009. That he did not know the precise reasons for Unum Life's insistence that Levy was not entitled to them does not suggest Unum concealed facts from Levy such that he could not discover his potential claim despite his diligence in trying. Accordingly, the doctrine of fraudulent concealment cannot apply here to toll the relevant statutes of limitation.

## C.

Finally, Levy invokes the doctrines of equitable estoppel and excusable neglect as grounds for tolling. Levy asserts that he "did not know and could not have known . . . that Unum violated his legal rights" prior to April 2018 or August 2020. These arguments are also meritless. Levy knew at least in July 2009 "that he could have pursued legal remedies" against Unum. Thus, Levy's communications in 2018 and 2020 did not operate to revive his opportunity to bring claims that had long ago passed.

AFFIRMED.