# United States Court of Appeals
# for the Fifth Circuit

—————————

No. 23-50558

—————————

United States Court of Appeals
Fifth Circuit

**FILED**

May 9, 2024

Lyle W. Cayce
Clerk

Shantyry Martin,

*Plaintiff—Appellant*,

*versus*

Sedgwick Claims Management Services, Incorporated;
General Electric Company,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-169

———————————————————————

Before Higginson, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Shantyry Martin sued General Electric and Sedgwick Claims Management for disability benefits. The district court held Martin's suit is time-barred. We agree.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50558

## I.

Shantyry Martin began working as a quality inspector for General Electric in 2015. Soon after, Martin was diagnosed with systemic lupus erythematosus, rheumatoid arthritis, gout, and fibromyalgia. Martin's rheumatologist eventually told her that the demands of her work were causing accelerated progression of these diseases, so Martin retired. Her last day of work was June 6, 2018.

As a GE employee, Martin was automatically enrolled in a disability benefits program called the Salary Continuation Program ("SCP"). The terms of the SCP are set forth in two GE handbooks: the Disability Benefits Handbook and the Administrative Handbook. SCP is designed to provide a participant with all or a portion of her regular pay for up to 26 weeks if GE determines she is "unable to perform the duties of [her] regular job" or another job that is both available and medically appropriate. ROA.96. To qualify for SCP benefits, a doctor must certify that the participant is disabled, and the GE Disability Benefits & Leave Center ("DBLC") must approve the doctor's certification.

Martin submitted an SCP claim to DBLC on June 7, 2018, the day after she retired. DBLC denied the claim on June 29. It explained Martin's physician failed to submit a statement certifying her disability even though DBLC prompted him multiple times.

The Administrative Handbook provides that SCP participants may appeal denial of an SCP claim, and it sets forth the procedures governing those appeals. Martin appealed DBLC's denial of her claim pursuant to the Handbook procedures, and her doctor submitted a certification and other information respecting Martin's disability during the appeal period. Sedgwick Claims Management Services, DBLC's claims manager, reviewed Martin's file and determined it did not support Martin's claim that her

No. 23-50558

disability rendered her incapable of performing her essential job functions. So on September 4, 2018, DBLC affirmed its denial of Martin's claim. Martin appealed two more times; both times DBLC reaffirmed its denial for substantially the same reason it had already given. DBLC's decision respecting Martin's claim became final when it disposed of her third appeal. *See* ROA.194 ("This represents the [DBLC] Appeals Unit final decision with respect to your . . . claim."). That decision issued on February 12, 2019.

On February 10, 2023, Martin filed suit against GE and Sedgwick. Martin alleged the SCP constituted a contract between GE and its employees and that GE and Sedgwick breached that contract by denying Martin benefits they owed her. GE and Sedgwick moved to dismiss the suit on the ground that Martin's sole claim is time-barred.

The district court agreed with GE and Sedgwick. It explained the terms of the SCP contract between GE and its employees were set forth in the Disability Handbook and the Administrative Handbook. And in the district court's view, Section 2.1.2 the Administrative Handbook provides that a lawsuit related to the denial of an SCP claim must be brought no more than three years after DBLC initially denies the claim. DBLC first denied Martin's claim on June 29, 2018, and Martin did not file suit until February 10, 2023, so the district court held that Martin's breach-of-contract claim was time-barred. Martin timely appealed. Our review is de novo. *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

## II.

Martin contends the district court erred by applying the contractual limitations provision to her breach-of-contract claim. We need not reach that issue, however, because Martin's suit is untimely even if that provision does

not apply.[1] That is because absent contractual alteration, Texas applies a four-year limitations period to breach-of-contract actions. TEX. CIV. PRAC. & REM. CODE § 16.051. Martin sued on February 10, 2023, which means her suit is time-barred under § 16.051 if her claim accrued before February 11, 2019. And it did.

Under Martin's theory, the SCP is essentially an insurance contract. Under Texas law, a claim for breach of an insurance contract accrues on the date the insurer issues an unambiguous denial of coverage, unless the insurer subsequently takes action to impugn its denial. *See Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 313–14 (5th Cir. 2019) (relying on *Pace v. Travelers Lloyds of Tex. Ins. Co.*, 162 S.W.3d 632 (Tex. App.—Houston [14th Dist.] 2005)). *Pace* suggests a denial of coverage is unambiguous unless it would lead a reasonable person to believe that a coverage decision has not been made—*e.g.*, if the insurer requests further information, suggests that further information is needed to reach a decision, or otherwise implies that a coverage decision has not been made. *See* 162 S.W.3d at 634.

On September 4, 2018, DBLC sent Martin a letter that said: "As the medical information in [your] file does not support your inability to perform your own occupation, as defined by the Plan . . . we have no alternative other than to reaffirm the denial of benefits . . . ." ROA.215. The September 4 letter did not request further information or suggest that further information was needed to make a coverage decision, so it constituted an unambiguous denial of coverage. Martin's claim accordingly accrued on September 4,

---

[1] We "may affirm a district court's grant of a motion to dismiss on a basis not mentioned in the district court's opinion." *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002).

2018, unless DBLC subsequently nullified the letter's accrual-inducing effect.[2]

Martin contends DBLC did so by affording her an opportunity to request reconsideration of its decision. But Texas law makes clear that an insurer's post-denial willingness to re-investigate a claim, and actual re-investigation, does not alone operate to nullify the prior accrual date. *See Travelers*, 932 F.3d at 314–15. Instead, a claim accrues the moment an unambiguous denial is communicated, and that accrual date sticks unless the insurer subsequently takes action that is "inconsistent with [the denial] decision." *Id.* (quoting *Pace*, 162 S.W.3d at 635). Reconsideration is not inconsistent action. *See Travelers*, 932 F.3d at 314 ("[A]n insurer's post-denial re-investigation . . . is not. . . action inconsistent with the denial decision." (quotation omitted)). Martin does not allege that DBLC did anything else to nullify the effect of its September 4 denial decision. Her post-September-4 appeals accordingly did not affect the date on which her breach-of-contract claim accrued.

Martin also argues her claim could not have accrued until DBLC denied her final appeal because the Administrative Handbook required her to exhaust DBLC appeals before filing a lawsuit. And under Texas law, a claim "generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy." *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). But the only Handbook provision that could have required Martin to exhaust her claims is Section 2.1.2—the same provision containing the contractual limitations provision that Martin says

_____

[2] DBLC's June 29 denial invited further information and so did not constitute the kind of unambiguous denial that triggers claim accrual. *See* ROA.189 ("In order to perfect your claim, please provide any missing medical documentation related to your disability from recent treating provider visits.").

does not apply to her lawsuit. ROA.167. If the contractual exhaustion requirement applies, so does the contractual limitations provision, and if the contractual limitations provision applies, then Martin's lawsuit fails.[3]

Martin therefore does not base her exhaustion argument on any contractual provision. Instead, she argues that exhaustion was required because the Handbook adopts ERISA procedures for SCP claims, and an ERISA cause of action "does not accrue until the plan issues a final denial." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013). But the Handbook expressly states that "the SCP is not subject to ERISA and the provisions of this handbook shall not be interpreted in a manner that applies ERISA (*or any of its requirements*) to the SCP." ROA.158 (emphasis added). There is thus no basis for Martin's argument that the Handbook somehow applies ERISA exhaustion to SCP claims.

AFFIRMED.

---

[3] Unless we equitably tolled the contractual limitations period. But Martin has not shown that she actively pursued her judicial remedies during the statutory period, or that she was tricked into allowing her filing deadline to pass, or any other basis for equitable tolling. *See Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005).